William JOHNSON, by his conservator, Richard Johnson, on his own behalf and on behalf of all others similarly situated, Plaintiffs,

v.

Terry BRELJE, Ph.D., Superintendent of Chester Mental Health Center, Robert Devito, Director, Illinois Department of Mental Health and Developmental Disabilities, Defendants.

No. 78 C 1704.

United States District Court,
N. D. Illinois, E. D.

Oct. 1, 1981.

Susan M. Sitter, Maywood, Ill., Thomas Grippando, Edward Beis, Chicago, Ill., for plaintiffs.

Maureen D. Mudron, Christine A. Bremer, Alan E. Grischke, Chicago, Ill., for defendants.

SUPPLEMENTAL ORDER

ASPEN, District Judge:

This case came before the court on cross motions for summary judgment. In a Memorandum Opinion and Order issued on August 18, 1981, 521 F.Supp. 723, this court ruled on all issues raised in the cross motions for summary judgment, except for the alleged denial of periodic reviews prior to January 1, 1979. The parties have agreed in open court that this issue is now moot based upon the finding by this court that the defendants cannot be held liable for damages in this action.

In furtherance of the Order and Opinion of August 18, 1981, and in order to fully and finally resolve the issues raised before this court in this case, IT IS HEREBY ORDERED AS FOLLOWS:

*Definitions*

"Chester" means the Chester Mental Health Center. "DMHDD" means the Illinois Department of Mental Health and Developmental Disabilities.

"Future USTs" means those defendants who will be found unfit to stand trial and referred to DMHDD for admission subsequent to November 1, 1981, and who are assigned to Chester.

"Admission" means the initial placement of a future UST in a facility of DMHDD.

"Transfer" means the reassignment of a future UST from one DMHDD facility to another.

*Admissions and Transfers*

Effective November 1, 1981, all admissions and transfers to Chester of persons found unfit to stand trial, shall be in accordance with these procedures.

1. Admissions to Chester.
   a. Ten (10) days prior to the proposed placement at Chester, DMHDD shall serve written notice to the future UST and his attorney, of the proposed assignment to Chester. The notice shall include the evidentiary basis for the assignment, a statement that a hearing may be requested to contest the assignment, and the name of the person to whom a request for a hearing should be directed.
   b. If a request for a hearing is received prior to the scheduled date for admission to Chester a hearing will be convened. The hearing will take place within fourteen (14) days of receipt of the request.
   A neutral and detached hearing officer will be appointed. The hearing officer will be a physician, psychiatrist, clinical psychologist or qualified examiner; but in no case will s/he have been involved in the evaluation process. The future UST will remain in the jail pending the decision of the hearing officer.
   c. At the hearing the future UST shall have:
      1) An opportunity to contest the proposed assignment;
      2) An opportunity to appear in person and to present witnesses and evidence on his behalf;
      3) The right to confront and cross examine witnesses unless the hearing

officer finds good cause for not allowing confrontation.

d. The decision of the hearing officer shall be based upon the evidence introduced at the hearing. The burden shall be on DMHDD to establish that the assignment to Chester is the least restrictive environment appropriate for the future UST, based upon an assessment of the risk of dangerousness and the risk of escape presented by him. The decision of the hearing officer shall include a written statement as to the evidence relied upon and the. reasons for the decision.

e. Upon notification of the decision of the hearing officer, the sheriff will be advised of the DMHDD facility to which the future UST may be transported for admission.

2. Transfers to and from Chester.

All residents unfit to stand trial shall be transferred to and from Chester in accordance with the standards and procedures of the Illinois Mental Health and Developmental Disabilities Code. This provision is entered subject to the right of the plaintiffs' attorney, at the end of one (1) year, to petition the court for reconsideration if abuses of this provision can be demonstrated.

3. Outside Activities.

It will be the policy of the Chester Mental Health Center that a total of at least five opportunities to be outside per week will be scheduled for residents. The five activities scheduled may be a combination of the recreation area, the outdoor courtyards, the horticulture activities, cookouts, carnival activities and the like. Such activities will not be offered if one or more of the following conditions prevail:

a. The outside temperature is below 40°. However, if the resident has not been permitted outdoors for seven (7) days or more solely because the temperature was below 40°, Chester shall permit the resident to go outdoors at least one (1) day per week should the temperature be 32° or warmer. This proviso is entered subject to the right of the defendants, at the end of one year, to petition the court for modification for good cause shown.

b. The outside temperature exceeds 90°. This is medically necessary in view of the interaction effects between the heat, sunlight, humidity and the medications.

c. An individual resident may be denied the opportunity if his behavior or clinical condition make his participation unsafe.

d. Inclement weather such as rain, etc., render the area unusable.

e. Condition of the physical plant or other activities occurring in the area which would render it unsafe or make it impossible to maintain security.

f. Unplanned and unexpected personnel shortages as a result of illness or other circumstance which would make it impossible to assure safety or security. Should the conditions described in paragraphs # e and # f above, continue for a period of twenty one (21) days, the defendants shall so notify plaintiffs' attorneys on the twenty second day; provided however, that this notice requirement shall continue only for a period of one (1) year from the date of this Supplemental Order.

4. Telephone Policy.

Chester agrees that there shall be no ten (10) minute limit on calls defendants place to attorneys. Accordingly, residents shall be allowed reasonable time necessary for such calls, subject only to the limitation that telephone equipment is shared by other residents and no one resident will be permitted to effectively prevent other defendants from use of the telephones.

It shall be the policy of Chester to allow attorneys to call residents during the normal business day. Each resident shall be afforded the opportunity to provide Chester with the name of his attorney(s). However, if the caller is unknown to the Center, in order to preserve confidentiality and also prevent a security breach, the

following procedure will be utilized to facilitate the resident's talking with his attorney. The attorney's name and number will be taken and if the resident is on the unit, he will be notified immediately of the attorney's desire for him to call and telephone equipment made available for him to do so. If the resident is off the unit a message will be left for him. Within ninety (90) days from the date of this Supplemental Order, defendants shall have installed telephone equipment, or modify the present equipment, to permit the residents to have privacy in conducting telephone conversations with their attorneys.

5.  Implementation.

    Defendants shall inform plaintiffs' attorneys of any change in policies, practices, procedures or written instructions which would alter the implementation of this Supplemental Order at least ten (10) days prior to the implementation of such change; provided however, that this notice requirement shall continue only for a period of one (1) year from the date of this Supplemental Order.

This Order and the Memorandum Opinion and Order constitute a full and final resolution of all issues raised in the above captioned case. The time for filing a Notice of Appeal shall commence on the date of the entry of this Supplemental Order. It is so ordered.

### NOTICE OF PROPOSED ASSIGNMENT TO CHESTER MENTAL HEALTH CENTER

TO: _____ Date of Service of
_____ Notice _____
_____

The Department of Mental Health and Developmental Disabilities has determined that it would be appropriate to assign _____ to Chester Mental Health Center. Unless a hearing is requested, said assignment shall take place on _____.

Pursuant to the court's decision in *Johnson v. Brelje,* 78C1704 (N.D.Ill.1981) a defendant unfit to stand trial who is assigned to Chester may request a hearing to contest that assignment.

The evidentiary basis for the proposed assignment is as follows:

_____
_____
_____
_____
_____
_____

The request for a hearing can be made either by the individual or his attorney. Said request should be in writing and mailed to the following person(s) and must be received before the date assigned for placement:

_____
_____
_____

At this hearing, the individual shall have:

1.  The right to contest the proposed assignment;

2.  The right to present witnesses and evidence on his behalf;

3.  The right to confront and cross-examine witnesses, unless the hearing officer finds good cause for not allowing confrontation.

The decision of the hearing officer shall be based on the evidence introduced in the hearing. The burden shall be on DMHDD to show that the assignment to Chester is the least restrictive environment appropriate for the future UST, based upon an assessment of the risk of dangerousness and the risk of escape presented by him. Said decision shall include a written statement by the hearing officer as to the evidence relied upon and the reasons for the decision.

-------------------------------------------------

I, _____, hereby request a hearing to contest the assignment of _____ to Chester Mental Health Center.

_____
(Signature)